# SIMON DE LIZARRIBAR

*v.*

# CARLOS MOURRAILLE,

and

# ISIDRO LUINA

*v.*

# CARLOS MOURRAILLE.

San Juan, Equity, Nos. 694 and 695.

1. A life estate ends with the life of the holder thereof, and a lease made by the life tenant ends with the death of the lessor, save that, under the statute of Porto Rico, if the property leased is an agricultural estate, growing crops may be gathered by the life tenant or his lessees during the agricultural year.

2. Under the statute of Porto Rico, a life tenant or usufructuary, and hence his lessees, has no right to be indemnified for improvements, but may remove such improvements if it be possible to do so without damage to the property.

3. Sublessees of the lessee of a life tenant ordinarily have no rights in the property, as against the remainderman or residuary legatee.

Opinion filed March 21, 1910.

*Messrs. Sweet & Wilcox,* solicitors for complainants.

*Mr. Martin Travieso, Jr.,* solicitors for respondent.

NOTE.—Right of lessee of life tenant to possession and emblements upon death of his lessor, see note to Edghill v. Mankhey, 11 L.R.A. (N.S.) 688.

De Lizarribar v. Mourraille.

RODEY, Judge, delivered the following opinion:

These two cases were tried, in so far as they were tried at all, before the court without the intervention of an examiner or master. They are bills whereby the complainants respectively seek to have their alleged rights as lessees of certain premises ascertained and decreed, and the respondent enjoined from raising the rent or ejecting them until the expiration of such alleged leases.

By agreement of parties the pleadings were summarily made up, and the causes proceeded with, and, by stipulation, tried together without waiting the expiration of the time usually given for pleadings under the rule. The issue before us was raised at the end of complainant's case by a motion, interposed by respondent, for dismissal of the bills on the ground that the proofs do not sustain the same, and that no equity entitling complainants to any relief has been shown.

Briefly the facts are about as follows: A woman named Mercedes Escalona de Escalona, living at San Juan, Porto Rico, was possessed of a life estate in the premises in controversy. She obtained this estate under the terms of a will of an ancestor. The fee title to the premises under the terms of the will was devised to two nieces of the testator, if they survived this lady to whom the life estate was given. They did not survive her and, under the will, the property then went to the next of kin, exclusive of the life-estate holder. The lady holding the life estate in November, 1908, made a three-year lease of the premises to one Miguel Aguiló Forteza, and gave him certain privileges and rights in the lease, such as that he would have the right to renew it for an additional year, and it was provided that

V. Porto Rico—29.

at the end of the term all improvements put thereon by the lessee should be left as the property of the lessor, but that if the lease for any reason other than by the will of the lessee should end, then the lessor should be obliged to reimburse the lessee to the extent of $350, on account of improvements which it was acknowledged in the lease had been made.

A month after making this lease, the lady who made it died. The nieces having previously died, the premises went to the next of kin, but they did not immediately appear, and about a year elapsed before the title was finally adjudicated to them, it being ascertained that there were eleven of them, ten of whom lived in Spain and one in Peru. It also appears that the lady who had the life estate previous to her death, because of the death of these nieces, had made an attempt to get through the insular courts a dominio title to the property, so as to shut out the next of kin, —and this proceeding was being carried on after she died, by her attorney or administrator, when the next of kin appeared, defeated the effort, and, by a proper judgment or decree, secured the title for themselves, in accordance with the will. Shortly thereafter this respondent, through mesne conveyances, secured the title to the property, and became under the law entitled to manage the whole estate. The rents for the year that intervened had been collected by a judicial administrator appointed at the instance of counsel for these next of kin until they secured the adjudication of the property to themselves. This judicial administrator collected the rents under the order of the court. The lessee, Miguel Aguiló Forteza, after the death of his landlady, and in April, 1909, made subleases of portions of the premises to these complainants respectively, and entered into certain detailed contracts and leases with them, the terms of

De Lizarribar v. Mourraille.

which are, as we see it, immaterial on this issue, because they can have no rights that their grantor did not have.

Complainants made an effort to show the court that the respondent, Mourraille, who is the present owner of the property, knew of their leases, and this fact we think they have proved, but they also contend that he, by his action, has ratified their leases of the premises as they put it, and that therefore they should be permitted to hold to the end of their terms, and state that if they are not so permitted to hold they will sustain great loss, etc.

We will assume that counsel for these complainants had reason to believe their clients could prove that this present owner of the property had granted them some rights in the premises, or had in some manner leased the same to them; otherwise we cannot see how counsel would ever have gone to the trouble of filing this bill.

It is fundamental in law that a life estate ends with the life that owns it, and that the holder of such estate cannot lease the premises for a day longer than the life, and, as here, in the case of a recorded title that all persons take such premises with notice of that fact. The life tenant is a trustee in the sense that he cannot injure or dispose of the property to the injury of the rights of the remainderman. 16 Cyc. Law & Proc. p. 617, and cases cited. Statutes in some jurisdictions provide, where it is an agricultural estate, that if a crop is growing it may be gathered after the death of the life tenant, etc. In others, where rents are due, there are statutes arranging about their payment, etc., but the general rule would appear to be as stated. Therefore we think the lessee of a life estate should protect himself by a bond from the lessor against the latter's

De Lizarribar v. Mourraille.

death, or by some mode of insurance or otherwise.   Section 480 of the Civil Code of 1902 provides: "The usufructuary may personally benefit by the property in usufruct, lease it to another person, and alienate his right to the usufruct, even though it be by deed of gift; but all contracts he may enter into as such usu-fructuary shall terminate at the end of the usufruct, except the lease of rural tenements, which shall be considered as subsisting during the agricultural year."

Sec. 512 of the same Code, subsec. 1, provides that "the right to the usufruct is extinguished by the death of the usufruc-tuary."

In this particular case these two complainants took the sub-leases from the original lessee nearly five months after they had knowledge of her death, and, of course, they could not get any rights which their lessor did not possess.   See 24 Am. & Eng. Enc. Law, p. 450, and cases cited.

It is urged that a life estate is not worth much if a person cannot make a reasonable lease of it, because of the chances of death.   We do not think that fact changes the law, and, on the other hand, we can well see how, if any other rule was to obtain, a person in possession of property, having only a life estate therein might waste it, change it, or bind it in such manner as to render it useless to the remainderman or the residuary legatee.

The proofs in this case do not sustain complainant's conten-tion that the present owner of this property, by himself or his agents, has conceded them leases of the portions of these prem-ises they are claiming, or ratified alleged existing leases therefor in any manner.   In fact, there were no valid leases to be rati-fied.   At the time those so-called leases were signed, all the rights of this lessor had expired months before, on the instant

De Lizarribar v. Mourraille.

the life-estate owner of the premises died. There was a possession in the original lessee, and, subsequently, in complainants, that might have ripened into some sort of tenancy, but in this case we hold that the proofs do not show that it did so.

Counsel for complainants cites us to a statute of Porto Rico, of 1905, Session Laws, page 147, which provides in § 43 that "an administrator may let premises," etc. This might apply if there was any administrator here working under the appointment of a proper probate court in the direct settlement of an estate. The person who acted here was a mere judicial administrator or receiver, appointed by a court while the real owners of the property asserted their title against outsiders who were trying to possess themselves of it. The same counsel also make the point that they should, in any event, be allowed for the improvements they have made on the premises. Of course they are speaking for themselves and their grantor, the original lessee, but it is provided in § 487 of the Civil Code of 1902, aforesaid, that "a life tenant or usufructuary shall have no right to be indemnified for improvements, but he may remove such improvements if it be possible to do so without damage to the property."

We therefore hold that there is no equity in either of the bills and that they must be dismissed at the cost of the complainants. These sublessees, of course, have the same rights as their lessors, which we hold to have been nothing save the right to remove anything from the premises which has not become a part thereof, and which can be removed without damage to the realty, and, of course, they cannot be ejected summarily, because under the law and the facts here they are, at least, tenants from month to month. An order will therefore be entered dismissing the bills.